UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 09-20968-Civ-HUCK
MAGISTRATE JUDGE P.A. WHITE

FITZROY ROYER,                        :

    Petitioner,                   :

v.                                    :     REPORT OF
                                            MAGISTRATE JUDGE
WALTER McNEIL,                        :

    Respondent.                   :
_____

Introduction

Fitzroy Royer, a convicted state felon currently confined at the South Florida Detention Center, in Miami, Florida, filed a pro se petition for writ of habeas corpus pursuant to 28 U.S.C. §2254, challenging the constitutionality of the revocation of his probation and resultant sentence entered in Dade County Circuit Court Case No.s F05-32246, F05-034718, 05-034719, and F06-435.

This Cause has been referred to the undersigned for consideration and report pursuant to 28 U.S.C. §636(b)(1)(B) and Rules 8 and 10 of the Rules Governing Section 2254 Cases in the United States District Courts.

For its consideration of this petition (DE#1), the court has the respondent's response to an order to show cause with multiple exhibits (DE#s7-8).

The petitioner raises the following grounds for relief:[1]

---

[1] Although he raises four separate grounds, when comparing the grounds raised herein to those raised in the state forum, it is clear that claims one and two of this federal petition, are part of claim one in the underlying state court

>    1. His conviction for resisting arrest without violence cannot stand where he was merely fleeing from police in a high crime area, and the officers had no reasonable suspicion of criminal activity, as they were only interested in conducting a field interview.
>
>    2. Tossing evidence a few feet away does not constitute tampering as there was no specific intent to alter, destroy, or conceal evidence.

## Procedural History

On May 15, 2007, the petitioner entered a plea to 364 days in jail with all credit for time served and concurrent one year terms of probation with special conditions for drug evaluation and treatment, as well as, restitution in the following cases:

>    F05-32246  possession of cocaine, possession of drug paraphernalis, and trespass to property other than structure or conveyance;
>
>    F05-34718  resisting arrest with violence;
>
>    F05-34719  burglary of a dwelling, third degree grant theft; and,
>
>    F06-435    unemployment compensation fraud, third degree grand theft.

(DE#8:Exs.A:204-11,227-35;B-C).

Several days after the petitioner was placed on probation, an Affidavit of Violation of Probation and Violation Report was entered, charging the petitioner with violating the terms and

---

case. Claims three and four are part of claim two in the state forum. Therefore, for purposes of clarity the claims have been restated, and renumbered here.

conditions of his probation on the basis that the petitioner failed to live and remain at liberty without violating any law in that he committed the criminal offense of possession of cocaine, tampering with physical evidence, and resisting a law enforcement officer without violence on May 21, 2007, as charged in Miami-Dade County Circuit Court case no. F07-017355. (DE#8:Ex.A:29,38-40).

On September 5, 2007, at a probation revocation proceeding, testimony was taken from the petitioner's probation officer, the officers that arrested the petitioner, and the petitioner also testified, denying the allegations. (DE#8:Ex.A:Transcript Revoc. Proc.:69-71). At the conclusion of the hearing, the court found by a preponderance of the evidence that the petitioner had violated the terms of his probation by tampering with physical evidence and resisting an officer without violence. (Id.:85-86). The court noted that the petitioner's testimony was self-serving and incredible, while the officers' testimony was credible and consistent. (Id.:86,88). Consequently, his term of probation was revoked and he was sentenced to a total of ten-years in prison. (Id.:91). On that same date, an order was also entered revoking the petitioner's probation. (DE#8:Ex.A:41).

The petitioner appealed, raising the same claims raised in this federal petition, as listed above. (DE#8:Ex.E). On February 25, 2009, the Third District Court of Appeal *per curiam* affirmed the convictions and sentences without published opinion. Royer v. State, 3 So.2d 1264 (Fla. 3 DCA 2009); (DE#8:Ex.H). Thus, the judgment of conviction became final, for purposes of the federal AEDPA's one year statute of limitations, at the latest on May 25, 2009, ninety days following the affirmance of the convictions and

3

sentences on direct appeal.[2]

Prior to his convictions becoming final, the petitioner returned to the state court, again challenging his probation revocation sentence by filing a pro se motion to correct illegal sentence. (DE#8:Ex.I). On April 21, 2009, the trial court entered an order denying the motion as moot on the basis that the petitioner's sentence had been previously affirmed on appeal. (DE#8:Ex.J).

Meanwhile, during the pendency of the foregoing proceedings, the petitioner then came to this court, timely filing this federal habeas corpus petition on April 13, 2009.[3] The respondent rightfully does not challenge the timeliness of this petition. See 28 U.S.C. §2244(d).

Although the respondent argues that all claims of the instant petition have been properly exhausted and not subject to any procedural bar, warranting review on the merits of these claims, that argument is not entirely correct. See 28 U.S.C. §2254(b)(1) and (b)(1)(A)(A state prisoner's habeas corpus petition "shall not be granted unless it appears that--the applicant has exhausted the remedies available in the courts of the State...."). See also Bailey v. Nagle, 172 F.3d 1299, 1302-03 (11 Cir. 1999).

---

[2]For federal purposes, a conviction is final when a judgment of conviction has been rendered, the availability of appeal exhausted, and the time for a petition for certiorari elapsed or a petition for certiorari finally denied. Griffith v. Kentucky, 479 U.S. 314, 321, n.6 (1986); accord, Chavers v. Secretary, Florida Dept. of Corrections, 468 F.3d 1273, 1275 (11 Cir. 2006), citing, Bond v. Moore, 309 F.3d 770 (11 Cir. 2002)l; Coates v. Byrd, 211 F.3d 1225 (11 Cir. 2000). Ordinarily, a petition for writ of certiorari must be filed within 90 days of the date of the entry of judgment, rather than the issuance of a mandate.  Supreme Court Rule 13.

[3]The date used to compute the filing is the date received by the court, as the petitioner failed to date his petition. Regardless, the date is of no import as it appears that the petition is timely filed.

4

The claims raised in this federal petition are unexhausted because the petition merely raised issues of state law, rendering the challenges not cognizable in this federal habeas corpus proceeding. Although the petitioner raised the two claims listed above on direct appeal, he did not assert a Fourteenth Amendment violation. Furthermore, the petitioner's direct appeal argument relied exclusively on state law substantive arguments and cited only to state cases. Thus, the petitioner has failed to exhaust these claims.

The AEDPA requires a state prisoner to exhaust all available state court remedies, either on direct appeal or in a state post-conviction proceeding, 28 U.S.C. § 2254(b)-(c), thereby giving the state the opportunity to correct its alleged violations of federal rights. Baldwin v. Reese, 541 U.S. 27, 29 (2004). The exhaustion doctrine requires the petitioner to "fairly present" his federal claim to the state courts in a manner to alert them that the ruling under review violated a federal constitutional right. Duncan v. Henry, 513 U.S. 364, 365-66 (1995) (quoting Picard v. Connor, 404 U.S. 270, 275 (1971)). Exhaustion is not satisfied "merely" if the petitioner presents the state court with "all the facts necessary to support the claim" or even if a "somewhat similar state-law claim was made." Kelley v. Sec'y for Dept. of Corr., 377 F.3d 1317, 1344 (11th Cir. 2004) (citation omitted). The petitioner must instead "present his claims to the state courts such that they are permitted the 'opportunity to apply controlling legal principles to the facts bearing upon his constitutional claim.'" Id. (quoting Picard, 404 U.S. at 277).

"'Thus, to exhaust state remedies fully the petitioner must make the state court aware that the claims asserted present federal constitutional issues.'" Jimenez v. Fla. Dep't of Corr., 481 F.3d

1337, 1342 (11th Cir. 2007)(quoting Snowden v. Singletary, 135 F.3d 732, 735 (11th Cir. 1998))(concluding that the issue was raised where the petitioner did not specifically state on direct appeal that these issues were to be reviewed under the Federal Constitution, but he provided enough information about the claims (including cites to Supreme Court cases) to notify the state courts that the challenges were being made on both state and federal grounds.). "A litigant wishing to raise a federal issue can easily indicate the federal law basis for his claim in a state court petition or brief, for example, by citing in conjunction with the claim the federal source of law on which he relies or a case deciding such a claim on federal grounds, or by simply labeling the claim 'federal.'" Baldwin, 541 U.S. at 32.

In this case, however, the petitioner cited exclusively to state cases, and all of his substantive arguments addressed Florida law. None of the cases he cited were decided on federal grounds and he did not otherwise indicate that he intended to raise federal claims. Baldwin, 541 U.S. at 32.

Moreover, the petitioner would now be barred from raising his constitutional claim before the state court. Florida law procedurally bars new claims or claims that have already been raised in prior petitions when "the circumstances upon which they are based were known or should have been known at the time the prior petition was filed." Johnson v. Singletary, 647 So.2d 106, 109 (Fla. 1994). In order to overcome this procedural bar in federal court, petitioners must "demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." Coleman v. Thompson, 501 U.S. 722, 750 (1991); Smith v. Jones, 256 F.3d 1135,

1138 (11th Cir. 2001). The petitioner has neither alleged nor shown either cause or prejudice that would excuse the default. Likewise, the petitioner has neither alleged nor shown the applicability of the actual innocence exception. A review of the record reveals that the petitioner is unable to satisfy either of the exceptions to the procedural default bar. Therefore, the claims are procedurally barred.

## Merits

Regardless, on the merits, relief is precluded by § 2254(d). Petitioner filed his petition after April 24, 1996, the effective date of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub.L. No. 104-132, 110 Stat. 1214 (1996). Post-AEDPA law, therefore, governs this action. <u>Abdul-Kabir v. Quarterman</u>, 550 U.S. 233, 127 S.Ct. 1654, 1664, 167 L.Ed.2d 585 (2007); <u>Penry v. Johnson</u>, 532 U.S. 782, 792, 121 S.Ct. 1910, 150 L.Ed.2d 9 (2001); <u>Davis v. Jones</u>, 506 F.3d 1325, 1331, n .9 (11 Cir. 2007). It is important to recognize just how limited is this Court's review in a habeas proceeding. The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub.L .No. 104-132, 110 Stat. 1214 (1996), provides that a federal court may not grant the writ unless the state court adjudication on the merits either:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. §2254(d).

As the United States Supreme Court explained in <u>Williams v. Taylor</u>, 529 U.S. 362, 412-13 (2000):

> Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

In deciding whether a state court ruling involved an "unreasonable application" of federal law, this Court does not focus merely upon whether the state court decision was erroneous or incorrect; rather, this Court may issue a writ of habeas corpus only if the state court's application of clearly-established federal law was objectively unreasonable. *See id*. at 409-11. See also Knowles v. Mirzayance, ___ U.S. ___, 129 S.Ct. 1411, 1418 (2009).

The statutory phrase "clearly established Federal law" "refers to the holdings, as opposed to the dicta, of [the U.S. Supreme] Court's decisions as of the time of the relevant state-court decision." Williams v. Taylor, 529 U.S. at 412, 120 S.Ct. at 1523 (majority opinion by O'Connor, J.). Further, "a state court's decision is not 'contrary to ... clearly established Federal law' simply because the court did not cite [Supreme Court] opinions.... [A] state court need not even be aware of [Supreme Court] precedents, 'so long as neither the reasoning nor the result of the state-court decision contradicts them.'" Mitchell v. Esparza, 540 U.S. 12, 16 (2003)(*quoting* Early v. Packer, 537 U.S. 3, 7-8 (2002). Moreover, findings of fact by the state court are presumed correct, and the petitioner bears the burden of rebutting that presumption of correctness by clear and convincing evidence. See 28 U.S.C. §2254(e)(1); Crowe v. Hall, 490 F.3d 840, 844 (11 Cir. 2007), *cert. denied*, ___ U.S. ___, 128 S.Ct. 2053 (2008).

In **claim one**, the petitioner asserts that his conviction for resisting arrest without violence cannot stand where he was merely fleeing from police in a high crime area, and the officers had no reasonable suspicion of criminal activity, as they were only interested in conducting a field interview.

The loss of liberty necessitated in parole revocation requires that parolees be accorded due process.[4] <u>Morrissey v. Brewer</u>, 408 U.S. 471 (1972). The same due process requirements apply in probation revocation hearings. <u>Gagnon v. Scarpelli</u>, 411 U.S. 778 (1973). A revocation proceeding is, however, not a criminal trial. All that is required for revocation is that the evidence and facts reasonably demonstrate that the person's conduct has not been as good as required by the terms and conditions of his release. See <u>Mack v. McCune</u>, 551 F.2d 251, 254 (10 Cir. 1977). A criminal prosecution is governed by the reasonable doubt standard, while the state's burden of proof in a revocation proceeding is considerably less. The two are therefore different. See <u>Villareal v. United States Parole Commission</u>, 985 F.2d 835, 839 (5 Cir. 1993).

Similarly, Florida law is clear that a probation revocation hearing is more informal than a criminal trial, and the burden of proof is less because only the conscience of the court must be satisfied. <u>Cuciak v. State</u>, 410 So.2d 916 (Fla. 1982). The ultimate

---

[4]Specifically, <u>Morrissey v. Brewer</u>, 408 U.S. 471, 489 (1972) held that persons already at liberty on parole have a conditional liberty interest protected by the Fourteenth Amendment of the Constitution entitling them to the following minimum due process requirements during parole revocation proceedings: (1) written notice of the claimed violations of parole; (2) disclosure of the evidence against the parolee; (3) the opportunity to be heard in person and to present witnesses and documentary evidence; (4) the right to confront and cross-examine adverse witnesses; (5) a neutral and detached hearing body such as a parole board; and (6) a written statement by the factfinders as to the evidence relied on and reasons for revoking parole. <u>Id</u>. at 489.

facts necessary to convict a defendant of a criminal offense and those necessary to establish a probation violation are not the same. Russ v. State, 313 So.2d 758 (Fla.), cert. denied, 423 U.S. 924 (1975). A court at a revocation proceeding must conclude from the weight of the evidence only that a substantial violation of probation occurred. Wheeler v. State, 344 So.2d 630 (Fla. 2 DCA 1977). In fact, in Florida, hearsay evidence is admissible in violation of probation hearings, although it cannot provide the sole basis for revocation. Sylvis v. State, 916 So.2d 915 (Fla. 5 DCA 2005).

As it is a lesser standard than is required to prove the criminal charge, a probationer's term of probation may be revoked regardless of whether he was ever charged or convicted of any particular new offense. See Mempa v. Rhay, 389 U.S. 128 (1967)(holding that revocation of probation may be based on the alleged commission of offenses for which the accused is never tried); United States v. Jolibois, 294 F.3d 1110, 1114 (9 Cir. 2002)(upholding a revocation of supervised release based upon actual conduct where the defendant was not prosecuted for that conduct). See also State v. Jenkins, 762 So.2d 535 (Fla. 4 DCA 2000)(holding that affidavit of probation violation did not have to be dismissed on the ground that the state had nolle prossed the assault charge that was the basis for the violation of probation, as nolle prosequi at most meant that the state did not have sufficient evidence to meet its burden of proving guilt beyond a reasonable doubt, which was a higher standard than was required to prove the probation violation).

In this case, the finding that the petitioner violated the terms of his probation was based on the direct testimony of the state's witnesses, to-wit: Probation Officer Yonel St. Lewis, and

Miami-Dade County Police Officers Grundel and Figuerro. (DE#8:Ex.A:Transcript:53-144).[5]

Probation Officer St. Lewis testified that he was assigned to supervise the petitioner in case nos. F05-32246, F05-34718, F05-34719, and F06-435. (Id.:59). According to St. Lewis, he explained and the petitioner acknowledged the conditions of probation, including the fact that he was prohibited from violating the law or being arrested for new charges. (Id.:59-67). St. Lewis testified that the petitioner violated the terms of probation when he was arrested on new charges. (Id.).

Officer Grundel testified that on May 21, 2007, at approximately 7:58 p.m., he was conducting undercover surveillance with binoculars, from an unmarked police car, of a known drug house. (Id.:69-73). He explained that in the past year and a half, he had arrested numerous individuals at the house for drug and weapon violations. (Id.:71). On the day in question, he observed the petitioner enter a side gate of the house and walk towards the back to a rear apartment where the drug house was located. (Id.:72-73). Less than one minute later, the petitioner left the home. (Id.). Officer Grundel explained that he intended to ask the petitioner if the drug house was open, but never got the chance to question him because, after he and his partner identified themselves and showed their badges, the petitioner fled. (Id.:73-74).

According to Officers Grundel and Figuerro, they told the petitioner to stop running on numerous occasions. (Id.74,107-108).

---

[5]The numbers do not refer to the page numbers of the transcript, but rather to the page numbers assigned to the record on appeal, which can be found on the lower, right hand corner of the transcript.

During the ensuing chase, both officers observed that the petitioner had his hand in his right pocket, but then removed it from the pocket, throwing suspect crack cocaine rocks into the street. (Id.:74,98-99,107-108). Based on their experience handling narcotics, the officers knew the substance the petitioner threw was crack cocaine. (Id.:75,88-90,98-99,107-108). Because it was raining and there was much traffic on the street where the rocks were thrown, it was impossible for the officers to recover the drugs. (Id.:74,83-84,94).

In finding the petitioner had violated the terms of probation, the court found the petitioner's testimony at the hearing to be "self-serving," and that of the officers credible and consistent. (DE#8:Ex.A:136-40). Specifically, the court found by a preponderance of the evidence that the petitioner failed to remain at liberty without violating any law, by committing the criminal offense of tampering with physical evidence, and resisting an officer without violence on May 21, 2007. (Id.). However, the court did note that the prosecution had failed to establish by a preponderance of the evidence that the petitioner possessed cocaine. (Id.). The court concluded that the petitoner had willfully and substantially violated the terms of probation, and then considered the petitioner's prior criminal history, including the number of violations previously committed, at which time it imposed a total of ten-years of imprisonment. (Id.:209-210). Those findings were subsequently affirmed on appeal. Royer v. State, supra.

According to the petitioner, he was unlawfully detained, and thus the court could not have revoked his probation because he never violated the terms of probation. The petitioner argues that the officers had no reasonable suspicion in this case to justify

either an investigatory stop or to later stop and arrest him.

It is well-settled that police/citizen encounters fall within one of three categories: (1) consensual encounters where an officer elicits a citizen's voluntary cooperation which do not implicate the Fourth Amendment; (2) investigative detentions which are Fourth Amendment seizures of limited scope and duration and must be supported by a reasonable suspicion that a person has committed or is committing a crime, the "Terry" stop; and (3) arrests, the most intrusive of Fourth Amendment seizures and reasonable only if supported by probable cause. See U.S. v. Santibanez Garcia, 132 F.Supp.2d 1338, 1341-45 (M.D.Fla. 2000) and cases cited therein. See also United States v. Espinosa-Guerra, 805 F.2d 1502, 1506 (11 Cir.1986) (identifying investigative stops and full scale arrests among tiers of police-citizen encounters which implicate the Fourth Amendment). The law in Florida is the same. See Popple v. State, 626 So.2d 185, 186 (Fla. 1993)(identifying and defining the three levels of police-citizen encounters).

On the facts of this case, no constitutional violation occurred. As will be recalled, the officers were surveilling a residence where drug activities were occurring, and where prior arrests for drug and weapon violations had occurred. The petitioner was seen going into and then leaving that residence. When asked to stop, the petitioner ignored the request and instead, chose to flee. Moreover, it should be noted in passing that the petitioner had not been seized within the meaning of the Fourth Amendment at the time the officers first requested that he stop. See California v. Hodari D., 599 U.S. 621, 626 (1991)(seizure does not occur until the suspect is actually physically subdued by an officer or submits to the officer's show of authority). In this case, however, when the officers gave chase and observed the petitioner throw towards

the street crack cocaine, at that point, the petitioner committed a crime. See C.E.L. v. State, 995 So.2d 558, 561 (Fla. 2 DCA 2008); Texas v. Brown, 460 U.S. 730, 741-42 (1983)(probable cause merely requires that the facts available to the officer would warrant a man of reasonable caution in the belief that certain items may be contraband; it does not demand any showing that such belief be correct or more likely true than false.); Curtis v. State, 748 So.2d 370, 374 (Fla. 4 DCA 2000)(officer's belief that what he saw in defendant's mouth was crack cocaine was sufficient for probable cause even though he conceded substance could have been something else.); Smalls v. State, 858 So.2d 1244, 1246 (Fla. 5 DCA 2003)(accord); Houston v. State, 925 So.2d 404, 408-09 (Fla. 5 DCA 2006).

The petitioner also asserts that flight, standing alone, does not provide sufficient evidence under state law for the offense of obstructing justice. (DE#1:8). This argument was raised in the state forum as part of the foregoing claim and has been extrapolated and reasserted here as part of a separate claim. (See DE#8:Ex.E:11). This argument should be denied for the reasons previously expressed herein. Regardless, it should be noted that under Florida law, in order to convict a defendant of obstructing or resisting an officer without violence, the prosecution must prove: (1) that the officer was engaged in the lawful execution of a legal duty, and (2) the defendant's action constituted obstruction or resistance of that lawful duty. J.P. v. State, 855 So.2d 1262, 1265-66 (Fla. 4 DCA 2003); Jay v. State, 731 So.2d 774 (Fla. 4 DCA 1999).

In this federal habeas proceeding, the petitioner is again attempting to argue matters of state law, which as previously noted, is not cognizable here. Nevertheless, after viewing the

evidence adduced at the probation revocation proceeding, it is clear that the foregoing elements of obstruction were met. The officers were engaged in a lawful duty and the petitioner's action of fleeing from police and throwing out suspect crack cocaine as he did so constituted obstruction or resistance.

When considering the totality of the circumstances as it appeared to the officers at the time of the stop, the officers had sufficient facts available to give rise to a reasonable suspicion that the petitioner, had been engaged in criminal activity, justifying an investigative stop under <u>Terry</u>. Even if the officer's had no reasonable suspicion to stop the petitioner as he exited the house, clearly on the record before this court, the officers had probable cause to effectuate the petitioner's arrest once he was observed throwing crack cocaine rocks into the street. Consequently, no constitutional violation has occurred. The trial court's determination that the petitioner violated the terms of his probation was proper. Under these circumstances, the state court's rejection of this claim on direct appeal was in accordance with federal constitutional principles and should not be disturbed here. <u>Williams v. Taylor</u>, <u>supra</u>.

In **claim two**, the petitioner asserts that tossing evidence a few feet away does not constitute tampering as there was no specific intent to alter, destroy, or conceal evidence.

Section 918.13(1)(a), <u>Fla.Stat</u>. states in pertinent part:

> (1) No person, knowing that a criminal ... investigation by a ... law enforcement agency, ... is pending or is about to be instituted, shall:
> (a) Alter, destroy, conceal, or remove any record, document, or thing with the purpose to

>     impair its verity or availability in such ...
>     investigation.

In order to prove the offense, the state must show that the defendant had knowledge of an impending investigation and destroyed evidence in order to impair its availability for the investigation. See State v. Jennings, 666 So.2d 131, 132 (Fla. 1995). In Jennings, the officers, using binoculars, observed Jennings holding what they believed was a marijuana cigarette. Id. at 131. As one of the officers approached Jennings, the officer observed what he believed to be loose cocaine rocks in Jennings' hands. Id. When the officer shouted, "police!," Jennings put the alleged cocaine rocks into his mouth and swallowed them; they were never recovered. Id. In analyzing whether the state had proved that Jennings had tampered with physical evidence in violation of section 918.13, the Supreme Court held that "swallowing an object clearly constitutes altering, destroying, concealing or removing a 'thing' within the meaning of section 918.13." Id. at 132 (disapproving Boice v. State, 560 So.2d 1383, 1384 (Fla. 2d DCA 1990))(holding that swallowing alleged contraband did not "rise to the level of conduct which constitutes a concealment or removal of something for the purpose of impairing its availability for the criminal trial," and approving McKinney v. State, 640 So.2d 1183, 1186 (Fla. 2d DCA 1994)) and McKenzie v. State, 632 So.2d 276, 277 (Fla. 4th DCA 1994)(concluding that swallowing a substance which appeared to be cocaine surely constituted an intent to alter or destroy or conceal it).

In this case, the evidence adduced at the revocation proceedings established that after the police announced their presence and showed their badges to the petitioner, the petitioner fled and then purposefully threw out crack cocaine rocks as the officers were chasing him. Moreover, the petitioner was aware that he was on probation, and faced lengthy prison time if he violated

the terms and conditions thereof. The petitioner was observed at a known drug house, he immediately fled police, and then destroyed drugs he was carrying by tossing them onto a wet, busy street. Based on the foregoing, it is clear that there was ample evidence to support the finding by the court that the petitioner violated the terms of his probation.

Moreover, in his final argument raised as a separate claim in this habeas petition, but which is in legal effect, supplemental argument in support of claim two, he relies on numerous state law cases which were filed as a supplement to his brief on appeal. According to the petitioner, there exists a conflict between the law in the Third District and Second District Court of Appeals. However, resolution of conflicts between Florida courts is a matter left to the discretion of the Florida Supreme Court pursuant to Art. V, §3(b)(3), Fla.Const. This is not a proper issue for federal habeas corpus review. Even if it were, no showing has been made that the trial court's decision to revoke the petitioner's probation was unlawful, nor that the conflicts mentioned by the petitioner would entitle him to relief. Under these circumstances, the state court's rejection of this argument was not contrary to federal constitutional law and should not be disturbed here. Williams v. Taylor, supra.

## Conclusion

For the foregoing reasons, it is recommended that this petition for writ of habeas corpus be dismissed for lack of exhaustion and alternatively denied on the merits.

Objections to this report may be filed with the District Judge within ten days of receipt of a copy of the report.

SIGNED this 12th day of April, 2010.

                                                  UNITED STATES MAGISTRATE JUDGE

cc: Fitzroy Royer, Pro Se
    #M—01535
    South Florida Reception Center
    14000 N.W. 41st Street
    Doral, FL 33178-3003

    Nicholas A. Merlin, Ass't Atty Gen'l
    Office of the Attorney General
    Department of Legal Affairs
    444 Brickell Avenue, Suite 650
    Miami, FL 33131